Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2023 09:10 AM CST

Konrad Sinu and Lidia Szurlej, appellants,
v. Concordia University, appellee.

___ N.W.2d ___

Filed January 13, 2023.    No. S-21-959.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.

3. **Rules of the Supreme Court: Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, an appellate court reviews de novo any underlying legal conclusion that the proposed amendments would be futile.

4. **Contracts: Words and Phrases.** An exculpatory clause is a contractual provision relieving a party from liability resulting from a negligent or wrongful act.

5. **Contracts: Intent.** Exculpatory clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he or she is contracting away.

6. **Contracts: Words and Phrases.** An exculpatory clause is governed by principles generally applied in construction or interpretation of other contracts.

7. **Contracts: Negligence: Liability: Intent.** If there is no specific reference to liability for negligence, it must otherwise clearly appear from the language used or from a determination that no other meaning could

be ascribed to the contract such that the court is firmly convinced that such interpretation reflects the intention of the parties.

 8. **Contracts: Words and Phrases.** An exculpatory clause, like a contract, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

 9. **Contracts: Intent.** A contract which is written in clear and unambiguous language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms.

10. **Contracts: Public Policy.** Courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy; to be void as against public policy, the contract should be quite clearly repugnant to the public conscience.

11. ____: ____. Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved.

12. **Contracts.** An essential fact in determining unconscionability is the disparity in respective bargaining positions of parties to a contract.

13. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

14. **Rules of the Supreme Court: Pleadings: Appeal and Error.** When a party seeks leave to amend a pleading, appellate court rules generally require that leave shall be freely given when justice so requires. Denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.

15. **Pleadings: Pretrial Procedure: Summary Judgment.** When a motion for leave to amend a pleading is filed after a motion for summary judgment but before discovery is closed, the standard for assessing the futility of the amendment turns on whether there was a sufficient opportunity for discovery.

16. ____: ____: ____. When a motion for summary judgment has been filed and a party seeking leave to amend a pleading has had sufficient opportunity for discovery, futility is judged by whether the proposed amendment could withstand a motion for summary judgment.

17. **Pleadings: Evidence: Summary Judgment.** A proposed amendment to a pleading may be considered futile when the evidence in support of the proposed amendment creates no triable issue of fact and the opposing party would be entitled to judgment as a matter of law.

18. **Negligence: Words and Phrases.** Gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty.
19. **Negligence.** Whether gross negligence exists must be ascertained from the facts and circumstances of each particular case and not from any fixed definition or rule.
20. **Negligence: Summary Judgment.** The issue of gross negligence is susceptible to resolution in a motion for summary judgment.

Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed.

Jason G. Ausman and Michelle D. Epstein, of Ausman Law Firm, P.C., L.L.O, for appellants.

David P. Kennison and Heidi A. Guttau, of Baird Holm, L.L.P., for appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ., and STRONG, District Judge.

CASSEL, J.

## I. INTRODUCTION

Based upon a waiver of liability signed by a student and his mother, the district court granted a summary judgment rejecting their negligence claim against a university. The court also refused an attempt—made after the summary judgment motion was filed but before discovery closed—to amend the complaint. They appeal.

We find no error in granting summary judgment. Although the release did not mention negligence, its language was broad and clear and did not contravene public policy.

On the denial of leave to amend, we first settle the standard for assessing futility at that point. Because they had sufficient opportunity for discovery and we agree that their proposed amendments to add allegations of gross negligence would be futile, we find no abuse of discretion. We affirm.

## II. BACKGROUND

We begin with a brief background. Additional facts will be incorporated, as necessary, in the analysis section.

Concordia University is a private institution in Nebraska. It recruited Konrad Sinu (the student) to play for the university's intercollegiate men's soccer team. The university provided the student with soccer and academic scholarships. Before the student moved to Nebraska from his home in England, he signed an "Assumption of Risk and Waiver of Liability Release." Because the student was 18 years old, his mother also signed the release.

Roughly 5 months after arriving at the university, the student and his soccer teammates engaged in a mandatory strength and conditioning workout at the university's Walz Human Performance Complex (the Walz). The workout involved circuit training in which the teammates moved from one exercise station to another in small groups. One station consisted of an exercise referred to as the "face pull." In the exercise, an elastic resistance band was secured to a squat rack post and was pulled toward the user's face. During the course of the workout, teammates altered the band's placement from how a university employee originally set it. When the student approached the squat rack, he observed the resistance band resting on a "J-hook" of the squat rack. As the student performed the exercise, the resistance band slid off the hook and caused injury to his eyes.

The student and his mother sued the university, setting forth a cause of action for negligence. The university asserted numerous affirmative defenses in its responsive pleading. One defense alleged that the claim was barred by the release signed by the student and his mother. Another defense alleged that the claim was barred by the doctrine of assumption of risk.

Some 4 months prior to the discovery deadline, the university moved for summary judgment. Approximately 2 months later and prior to the hearing on the university's motion, the student and his mother moved for leave to file an amended complaint. They wished to add allegations that the university's

willful and wanton or grossly negligent actions caused the student's injuries. Following a hearing on the motion to amend, the court denied the motion.

After the discovery deadline and days before the scheduled summary judgment hearing, the student and his mother filed a renewed motion for leave to file an amended complaint. The court again denied the motion for leave, finding that any amendment would be futile.

The court held a hearing on the motion for summary judgment and received a number of exhibits. It subsequently entered summary judgment in the university's favor and dismissed the complaint with prejudice. In doing so, the court rejected arguments that the release was unconscionable, that it did not release the university from liability for its own negligence, and that the release did not amount to an assumption of risk.

The student and his mother appealed, and we moved the case to our docket.[1]

## III. ASSIGNMENTS OF ERROR

The student and his mother allege that the district court erred in (1) granting summary judgment in the university's favor when genuine disputes remain as to material facts and the ultimate inferences that a jury may draw from those facts and (2) denying their motion for leave to file an amended complaint when the proposed amended complaint stated a claim for which relief could be granted.

## IV. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[2] *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

[2] In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[3]

[3] An appellate court reviews a district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, an appellate court reviews de novo any underlying legal conclusion that the proposed amendments would be futile.[4]

## V. ANALYSIS

### 1. Summary Judgment

This case is before us following the district court's entry of summary judgment in the university's favor. To establish entitlement to judgment as a matter of law, the university relied on the release signed by the student and his mother. For summary judgment to be appropriate, the release must be valid and enforceable. The student and his mother argue that it was not. Before considering their challenges, we set forth the language of the release and discuss exculpatory and indemnity clauses.

### (a) Additional Facts

The entire release appeared on one side of a single page. The title, "Assumption of Risk and Waiver of Liability Release," was displayed in large, boldface type. It then stated:

> **PLEASE READ THE FOLLOWING CAREFULLY.**
> If you have any questions or concerns, please visit with an attorney before signing this document. This release must be signed before participation in activities at [the university] is allowed.
> . . . .
> I acknowledge that my participation in certain activities including, but not limited to, intercollegiate athletics

---

3 *Id.*

4 *Williams v. State*, 310 Neb. 588, 967 N.W.2d 677 (2021).

intramural sports, use of [the Walz], P.E. Center, [u]niversity stadium field/track, adjacent [u]niversity athletic fields and the City of Seward's Plum Creek Park may be hazardous, that my presence and participation are solely at my own risk, and that I assume full responsibility for any resulting injuries, damages, or death.

In consideration of being allowed to participate in such activities and/or being provided access and the opportunity to use the Walz and other [u]niversity facilities and equipment, and in full recognition and appreciation of the danger and risks inherent in such physical activity, I do hereby waive, release and forever discharge the [u]niversity, its officers, directors, agents, employees and representatives, from and against any and all claims, demands, injuries, actions or causes of action, for costs, expenses or damages to personal property, or personal injury, or death, which may result from my presence at or participation in any such [u]niversity activities.

I further agree to indemnify and hold the [u]niversity, its officers, directors, agents, employees and representatives harmless from any loss, liability, damage or costs including court costs and attorney's fees incurred as a result of my presence at or participation in any such activities. I also understand that this [release] binds me, my personal representatives, estate, heirs, next of kin and assigns.

I have read the [release] and fully understand it and agree to be legally bound by it.

Beneath a line for the student's signature, the release contained the following section, with boldface type as it appeared on the document:

**If 18 years of age or younger, signature of parent/ guardian is also required.**

I, as the parent or guardian of the above-named minor, have read the [release], fully understand it, and hereby voluntarily agree and execute the [release] on behalf of

myself as well as the above-named minor and agree that
the minor and I are legally bound by it.

Below this section appeared a line for the parent's or guardian's signature.

### (b) Discussion

#### (i) Exculpatory and Indemnity Clauses

[4] The release is a type of exculpatory clause. An exculpatory clause is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act."[5] Such clauses purport to deny an injured party the right to recover damages from the very person or entity which negligently caused the injury.[6]

The release also contained an indemnity clause, but that clause has not been a focal point of the litigation. We do not express any opinion regarding the validity of the indemnity clause contained in the release. However, we briefly discuss indemnity clauses in general in order to distinguish them from exculpatory clauses.

An indemnity clause is "[a] contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur."[7] Although an indemnity clause may ultimately have the same effect as an exculpatory clause, they differ. "An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing the injury, while an indemnification clause attempts to shift the responsibility for the payment of damages to someone other than the negligent party . . . ."[8] In some situations, the indemnity clause shifts such responsibility back to the injured party,

---

[5] Black's Law Dictionary 712 (11th ed. 2019).

[6] See 57A Am. Jur. 2d *Negligence* § 41 (2022).

[7] Black's Law Dictionary 919 (11th ed. 2019).

[8] 57A Am. Jur. 2d, *supra* note 6, § 43 at 86.

thereby yielding the same result as an exculpatory clause.[9] But "an indemnity provision generally does not apply to claims between the parties to an agreement. . . . 'Rather, [the provision] obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision.'"[10]

[5] Both exculpatory and indemnity clauses must make clear the effect of the agreement. And such a clause is strictly construed against the party claiming its benefit.[11] "Exculpatory clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he [or she] is contracting away."[12] Similarly, "[a]n agreement which purports to indemnify the party who prepared it from liability for that party's own negligence . . . must be clear, explicit and comprehensible in each of its essential details [and] must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement."[13] With this understanding in place, we turn to the student and his mother's attacks on the release.

### (ii) Clear Language

The student and his mother argue that the release did not contain express or clear and unequivocal language that the parties intended to release the university from its own negligence. They are correct that the release does not use words such as "negligence" or "fault." But that does not end the inquiry.

---

[9] See *id.*

[10] *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App. 2004).

[11] See, Annot., 175 A.L.R. 8, § 8 (1948); 57A Am. Jur. 2d, *supra* note 6; 17A C.J.S. *Contracts* § 448 (2020). See, also, *Dion v. City of Omaha*, 311 Neb. 522, 973 N.W.2d 666 (2022).

[12] 57A Am. Jur. 2d, *supra* note 6, § 46 at 91.

[13] *Id.*, § 44 at 88.

[6,7] An exculpatory clause is governed by principles generally applied in construction or interpretation of other contracts.[14] The provision must be looked at as a whole and given a reasonable construction.[15] If there is no specific reference to liability for negligence, it must otherwise clearly appear from the language used or from a determination that no other meaning could be ascribed to the contract such that the court is firmly convinced that such interpretation reflects the intention of the parties.[16] Here, the intended effect was clear.

Start with the language of the release. In large, boldface type at the top of the page appears the title, "Assumption of Risk and Waiver of Liability Release." The document then states that "[i]n consideration of . . . being provided access and the opportunity to *use the Walz*" and in recognition of the "risks inherent in such physical activity, I do hereby . . . *release . . . the* [*u*]*niversity . . .* from and against *any and all claims*, demands, injuries, actions or causes of action, for . . . *personal injury . . .* which may result from my presence at or participation in any such [u]niversity activities." (Emphasis supplied.)

Although the document does not mention negligence, it is apparent that releasing the university from its own negligence was the document's intended consequence. As is evident from the definition of an exculpatory clause set forth above, relieving a party from its own negligence is the very purpose of an exculpatory clause. The language of the release clearly demonstrates an intent to eliminate the university's liability, particularly when protecting the university from negligence claims is the only reasonable construction.[17]

---

[14] See *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989).

[15] See *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009).

[16] *Dion v. City of Omaha, supra* note 11.

[17] See 57A Am. Jur. 2d, *supra* note 6, § 49.

In some cases dealing with indemnity clauses, we have found broad language to not be clear or unequivocal. In one case, we determined that a reference to "'any and all claims for damage and liability for injury to or death of persons'" was not sufficient to impose liability for an indemnitee's negligence.[18] In another case, we stated that language that an indemnitor would protect an indemnitee against "'all risks and from any claims that may arise out of or pertain to the performance of such work,'" did not constitute express language covering the indemnitee's own negligence nor did it constitute clear and unequivocal language that it was the parties' intention to cover the indemnitee's own negligence.[19]

But we are not addressing an indemnity clause here. As set forth above, an exculpatory clause such as a release is not synonymous with an indemnity clause. Because indemnity clauses shift liability and may involve third parties, it is important to specify whose negligence is being covered. But here, an obvious purpose of the release was to exempt the university from its own negligence.

### (iii) Ambiguity

For the same reason expressed above, we reject the student and his mother's claim that the release did not unambiguously notify them that they were releasing the university from its own negligence. While the release's language may not have explicitly used the word "negligence" or referenced the university's conduct, it was not ambiguous.

[8,9] An exculpatory clause, like a contract, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting

---

[18] *Dion v. City of Omaha, supra* note 11, 311 Neb. at 556, 973 N.W.2d at 690.

[19] *Anderson v. Nashua Corp.*, 251 Neb. 833, 840, 560 N.W.2d 446, 450 (1997).

interpretations or meanings.[20] A contract which is written in clear and unambiguous language is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms.[21]

The release placed no liability on the university for any injury suffered by the student. The language plainly stated that the student released the university "from and against any and all claims, demands, injuries, actions or causes of actions, for costs, expenses or damages to personal property, or personal injury, or death, which may result from my presence at or participation in any such [u]niversity activities." This language covers "any" claim for ordinary negligence, which includes any claim caused by the university's ordinary negligence. We see no ambiguity.

### (iv) Unconscionable and
### Against Public Policy

Even if clear and unambiguous, an exculpatory clause will be unenforceable if it is unconscionable or void as against public policy. The student and his mother advance several reasons why they believe the release was unconscionable and void as against public policy. Those reasons lack merit.

[10] To begin, courts are disinclined to find a contractual agreement void as against public policy. Courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy; to be void as against public policy, the contract should be quite clearly repugnant to the public conscience.[22] Stated differently, the power of courts to invalidate contracts for being in contravention of public

---

[20] See *Community First Bank v. First Central Bank McCook*, 310 Neb. 839, 969 N.W.2d 661 (2022).

[21] *New Light Co. v. Wells Fargo Alarm Servs.*, 247 Neb. 57, 525 N.W.2d 25 (1994).

[22] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

policy is a very delicate and undefined power which should be exercised only in cases free from doubt. [23]

[11] Whether a particular exculpatory clause in a contractual agreement violates public policy depends upon the facts and circumstances of the agreement and the parties involved. [24] Public policy prevents a party from limiting its damages for gross negligence or willful and wanton misconduct. [25] It is important to note at this juncture that the student and his mother's claim is limited to ordinary negligence. We need not address the release's enforceability if the student and his mother had alleged gross negligence.

[12] We have stated that an essential fact in determining unconscionability is the disparity in respective bargaining positions of parties to a contract. [26] Other jurisdictions have adopted a two-prong test for determining whether exculpatory clauses are invalid as contrary to public policy: (1) whether there was a disparity of bargaining power between the parties and (2) the types of services being offered or provided. [27]

There was no disparity in bargaining power. The student emphasizes that he was an 18-year-old minor living on a different continent and believed he had to sign the release in order to attend the university. He highlights that the second sentence of the release stated it "must be signed before participation in activities at [the university] is allowed." But the first sentence of the release informed the student to speak with an attorney before signing the document if he had any concerns. The student had a reasonable opportunity to understand the terms of the contract. And because the student was a minor, his mother also had to agree to the terms and sign the release. The fact that the student was given the release

---

[23] *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006).

[24] *New Light Co. v. Wells Fargo Alarm Servs., supra* note 21.

[25] *Id.*

[26] *Myers v. Nebraska Invest. Council, supra* note 23.

[27] *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920 (Minn. 1982).

to sign a month prior to moving to Nebraska militates against his compulsion argument. He could have gone elsewhere to play soccer and attend college.

Further, the services offered by the university were not a public or essential service. The university is a private school, and the release related to a recreational activity. "Exculpatory agreements in the recreational sports context do not implicate the public interest and therefore are not void as against public policy. Indeed, plaintiff's ordinary negligence claims may generally be barred where she or he voluntarily executes exculpatory contract in order to participate in recreational or nonessential activities."[28] We conclude the release was not void as against public policy.

Because the release was valid, it barred the student and his mother's negligence claim against the university. We conclude the district court properly entered summary judgment in the university's favor.

### (c) Assumption of Risk

[13] The student and his mother additionally argue that the student did not assume the risk of the danger he confronted. But because the release barred the student's claim, we need not also address whether the student assumed the risk of his injury. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[29]

### 2. LEAVE TO AMEND

The student and his mother twice sought leave to amend their complaint to include allegations of gross negligence and willful and wanton misconduct. The court denied both requests. In considering whether the court abused its discretion in doing so, we set forth the relevant procedural timeline

---

[28] 57A Am. Jur. 2d, *supra* note 6, § 62 at 112.

[29] *Schreiber Bros. Hog Co. v. Schreiber*, 312 Neb. 707, 980 N.W.2d 890 (2022).

and determine the standard of review applicable under the circumstances.

### (a) Additional Facts

The following timeline provides helpful context in considering the timing of the motions for leave to amend:
• 06/26/2019: complaint filed
• 08/14/2019: answer filed
• 11/02/2020: discovery deadline extended to 06/04/2021
• 11/02/2020: depositions of three university employees taken
• 11/19/2020: depositions of the student and his mother taken
• 12/02/2020: deposition of university employee taken
• 01/28/2021: motion for summary judgment filed
• 03/25/2021: motion for leave to file amended complaint
• 04/05/2021: court denied motion for leave
 —allowed 45 days for disclosure of expert witness
 —extended discovery deadline to 08/01/2021
 —continued summary judgment hearing to 08/16/2021
• 05/19/2021: student's expert witness disclosed
• 08/11/2021: renewed motion for leave to file amended complaint

### (b) Discussion

[14] When a party seeks leave to amend a pleading, appellate court rules generally require that leave shall be freely given when justice so requires. Denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.[30] As the timeline demonstrates, the student and his mother first sought leave to amend after the university filed its motion for summary judgment but before discovery closed. They filed a renewed request for leave to amend after the discovery deadline.

Our case law has discussed the situation where leave is sought *before* discovery is complete and *before* a motion

---

[30] *McCaulley v. C L Enters.*, 309 Neb. 141, 959 N.W.2d 225 (2021).

for summary judgment is filed. If leave to amend is sought before discovery is complete and before a motion for summary judgment has been filed, the question of whether such amendment would be futile is judged by reference to Neb. Ct. R. Pldg. § 6-1112(b)(6).[31] Leave to amend in such circumstances should be denied as futile only if the proposed amendment cannot withstand a motion to dismiss under § 6-1112(b)(6).[32]

Our case law has also addressed the situation where leave is sought *after* discovery is closed and *after* a motion for summary judgment has been filed. After discovery is closed and a motion for summary judgment has been filed, the appropriate standard for assessing whether a motion to amend should be determined futile is that the proposed amendment must be not only theoretically viable but also solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact.[33]

Our case law has not directly addressed the situation here. The student and his mother sought leave to amend the complaint *before* the close of discovery but *after* the university filed a motion for summary judgment.

A commentator has proposed a standard to evaluate futility in such a situation. The commentator suggests that the standard used "should depend on whether the plaintiff can establish that it needs to engage [i]n discovery on the new matter alleged in the amendment."[34] The commentator explains:

> A plaintiff who seeks leave to amend but who lacks sufficient evidence to withstand a motion for summary judgment directed at the new matter should file an affidavit explaining why it needs additional discovery to develop a sufficient evidentiary basis for the new matter.

---

[31] *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017).

[32] *Id.*

[33] *Id.*

[34] John P. Lenich, Nebraska Civil Procedure § 15:4 at 723 (2022).

> If [the] court finds the explanation sufficient, then the court should evaluate the futility of the amendment by applying the standard for [a] motion to dismiss for failure to state a claim. If the court finds the explanation insufficient, then the court should apply the standard for summary judgment.[35]

[15] We agree with the commentator's view. When a motion for leave to amend a pleading is filed after a motion for summary judgment but before discovery is closed, the standard for assessing the futility of the amendment turns on whether there was a sufficient opportunity for discovery. Here, there was.

The student and his mother had engaged in substantial discovery to develop their case. At the time of their initial motion for leave, they had taken the depositions of six individuals. They had requested additional time to disclose expert opinions regarding the university's alleged negligence and had disclosed their expert witness prior to renewing their motion for leave.

[16,17] When a motion for summary judgment has been filed and a party seeking leave to amend a pleading has had sufficient opportunity for discovery, futility is judged by whether the proposed amendment could withstand a motion for summary judgment. In determining whether the proposed amendment was futile, the standard is whether the proposed amendment is both theoretically viable and solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact.[36] Stated differently, the proposed amendment may be considered futile "when the evidence in support of the proposed amendment creates no triable issue of fact and the opposing party would be entitled to judgment as a matter of law."[37]

---

[35] *Id.*

[36] See *Estermann v. Bose, supra* note 31.

[37] *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 169, 741 N.W.2d 184, 197 (2007).

With the appropriate standard in place, we review the district court's determination for an abuse of discretion. Addressing the renewed motion for leave, the court stated that the facts would not support a finding of gross negligence and that any amendment would be futile. We agree.

[18-20] The student and his mother wished to amend the complaint to allege the university's "negligence, recklessness, willful and wanton, and/or grossly negligent actions" caused the student's injury and damages. Gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty.[38] Whether gross negligence exists must be ascertained from the facts and circumstances of each particular case and not from any fixed definition or rule.[39] The issue of gross negligence is susceptible to resolution in a motion for summary judgment.[40]

The allegations in the proposed amended complaint do not rise to the level of gross negligence. The proposed complaint would allege, among other things, that the university was negligent in allowing the student athletes to pull the resistance band toward their faces and in failing to inform the student that other student athletes could modify the placement of the bands during the workout. At best, these allegations would implicate ordinary negligence. Because the proposed amendments would have been futile, we conclude the district court did not abuse its discretion in overruling the motions for leave to file an amended complaint.

## VI. CONCLUSION

We conclude that the district court properly entered summary judgment in the university's favor, because the release signed by the student and his mother was valid and enforceable and

---

[38] *Palmer v. Lakeside Wellness Ctr.*, 281 Neb. 780, 798 N.W.2d 845 (2011).

[39] *Id.*

[40] *Id.*

relieved the university of liability for its ordinary negligence. And because the proposed amendments to the complaint would have been futile, the district court did not abuse its discretion in overruling the student and his mother's motions for leave to amend. We affirm the judgment.

Affirmed.

Miller-Lerman, J., not participating.