United States Court of Appeals
For the Eighth Circuit
No. 24-3426

Lynne D. Panting, Personal Representative of the Estate of Ronald B. Panting, Deceased

*Plaintiff - Appellee*

v.

United States of America

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 19, 2025
Filed: December 22, 2025

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Ronald B. Panting was conducting an FAA "Checkride" for Michael Trubilla. The plane crashed, killing both of them. Lynne D. Panting, Ronald's spouse, sued. She alleged that the government negligently maintained the plane, causing the crash. The government moved for summary judgment, invoking Ronald's covenant not to sue. The district court invalidated it as against public policy. The government

appeals the denial of summary judgment. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

Ronald, an independent contractor, worked as an FAA Designated Pilot Examiner ("DPE"). DPEs are "private individuals" designated by the FAA to provide certification services to the public, including Checkrides. According to the FAA, DPEs are "vital to enhancing the FAA's public service role and enhancing overall safety" in the national airspace. As a DPE, Ronald was not an FAA employee. He earned money by charging exam fees to pilot applicants.

Ronald was also a member of the LeMay Aero Club, an instrumentality of the federal government located at Offutt Air Force Base. Before becoming a DPE, he was the Aero Club's chief flight instructor. After becoming a DPE, he conducted Checkrides in Aero Club planes, while remaining a part-time flight instructor. On July 24, 2016, Trubilla, a pilot applicant, rented an Aero Club plane and hired Ronald to do a Checkride. The plane crashed during the Checkride, killing both of them.

Five days before the crash, Ronald signed a covenant not to sue the government in exchange for using Aero Club planes. The covenant read, in part:

> I, Ronald Panting am about to voluntarily participate in various activities, including flying activities, of the LeMay Aero Club as a pilot, student pilot, copilot, instructor, or passenger. In consideration of the Aero Club permitting me to participate in these activities, I, for myself, my heirs, administrators, executors, and assigns, hereby covenant and agree that I will never institute, prosecute, or in any way aid in the institution or prosecution of, any demand, claim, or suit against the US Government for any destruction, loss, damage, or injury (including death) to my person or property which may occur from any cause whatsoever as a result of my participation in the activities of the Aero Club.

> . . . .

> I know, understand, and agree that I am freely assuming the risk of my personal injury, death, or property damage, loss or destruction that may result while participating in Aero Club activities, including such injuries, death, damage, loss or destruction as may be caused by the negligence of the US Government.

Air Force policy requires anyone participating in Aero Club activities—including DPEs and flight instructors—to sign the covenant at least annually. It exempts only FAA inspectors directly employed by the government.

Under the Federal Tort Claims Act, Lynne sued, arguing that the government negligently maintained the plane, causing the crash. The government moved for summary judgment, invoking the covenant. Lynne attacked the covenant as against public policy. She argued alternatively that it applied only when Ronald worked as a flight instructor, not when he worked as a DPE—as on the day of the crash. The district court denied summary judgment, ruling that the Nebraska Supreme Court would invalidate the covenant as against public policy. The district court did not decide the alternative theory that the covenant did not apply to Ronald in his DPE capacity.

After a bench trial, the district court ruled in favor of Lynne, finding that the government had negligently maintained the plane, causing the crash. It awarded a judgment of $5,806,381.57. The government did not challenge the district court's denial of summary judgment either at trial or in a post-trial motion.

The government appeals the denial of summary judgment, arguing the covenant is not against public policy. Lynne responds: (1) this court lacks jurisdiction to hear the appeal; and (2) the district court correctly ruled that the covenant is against public policy. This court reviews *de novo* a district court's denial of summary judgment and its determination of state law. *See Yang v. Farmers New World Life Ins. Co.*, 898 F.3d 825, 827 (8th Cir. 2018) (reviewing *de novo* a district court's denial of summary judgment based on contract interpretation and state law); *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) ("[A] court of appeals should review *de novo* a district court's determination of state law.").

-3-

II.

Lynne argues that this court lacks jurisdiction to review the denial of summary judgment because the government did not renew its argument at trial or in a post-trial motion. But "if a motion for summary judgment raises purely legal issues, it is reviewable on appeal even if the arguments were not revisited during trial." *Dupree v. Younger*, 598 U.S. 729, 736 (2023). And "a post-trial motion . . . is not required to preserve for appellate review a purely legal issue resolved at summary judgment." *Id.*

A district court's determination whether a contract offends public policy is a purely legal issue. *See Kelley as Tr. for PCI Liquidating Tr. v. Boosalis*, 974 F.3d 884, 894 (8th Cir. 2020) ("Whether a contract is void as against public policy is an issue of law."); *Bruce Lavalleur, PC v. Guarantee Grp., LLC*, 992 N.W.2d 736, 741 (Neb. 2023) ("The determination of whether a contract violates public policy presents a question of law.").

Here, the district court denied summary judgment because it believed the Nebraska Supreme Court would hold the covenant void as against public policy. The district court's ruling was not based on any factual dispute, or a need for factual development at trial. *See Fort Worth Partners, LLC v. Nilfisk, Inc.*, 155 F.4th 989, 996 (8th Cir. 2025) (declining to review a denial of summary judgment where the ruling "specifically left [the issue] open for further factual development at trial"). This court has jurisdiction to review the district court's ruling on a purely legal issue.

III.

The FTCA permits "persons injured by federal employees to sue the United States for tort claims in federal district court." *King v. United States*, 3 F.4th 996, 998-99 (8th Cir. 2021). "When analyzing actions brought under the FTCA, courts apply the substantive law of the state in which the events giving rise to the complaint occurred." *Shanner v. United States*, 998 F.3d 822, 824 (8th Cir. 2021); **28 U.S.C. § 1346(b)(1)**. If a state supreme court has not resolved an issue, this court determines how that court would rule if faced with the same issue. *Myers v. Lutsen Mountains*

***Corp.***, 587 F.3d 891, 896 (8th Cir. 2009). This court considers "relevant state court decisions, analogous decisions, considered dicta, and any other reliable data." ***Id.*** (cleaned up).

The Nebraska Supreme Court steadfastly holds that "the power of courts to invalidate contracts for being in contravention of public policy is a very delicate and undefined power which should be exercised only in cases free from doubt." ***Sinu v. Concordia Univ.***, 983 N.W.2d 511, 522 (Neb. 2023); ***Bedrosky v. Hiner***, 430 N.W.2d 535, 540–41 (Neb. 1988) ("[T]he court should act cautiously and not hold contracts void as being contrary to public policy unless they are clearly and unmistakably so."); ***Cass Cnty. Bank v. Bricker***, 52 N.W. 575, 575–76 (Neb. 1892) (same). A case is free from doubt where enforcing a covenant not to sue is "clearly and unmistakably repugnant to the public interest." ***Hearst-Argyle Props., Inc. v. Entrex Commc'n Servs., Inc.***, 778 N.W.2d 465, 472 (Neb. 2010). *See **Bruce Lavalleur***, 992 N.W.2d at 745 (holding that "a contract is void against public policy only when it is quite clearly repugnant to the public conscience") (citation and internal quotation marks omitted).

The district court focused on two factors to determine whether the covenant violated public policy: (1) whether there was a disparity of bargaining power between the parties; and (2) whether the services offered were public or essential. *See **Sinu***, 983 N.W.2d at 523 (applying the two-prong test of other jurisdictions).

## A.

To determine whether there is a bargaining power disparity in the context of covenants not to sue, the Nebraska Supreme Court considers whether the party had a reasonable opportunity to understand the subject matter, and whether they could have procured the services elsewhere. *See **Bedrosky***, 430 N.W.2d at 541 (no bargaining power disparity where the covenant was clear and the plaintiff had an opportunity to "shop around"); ***Sinu***, 983 N.W.2d at 523 (no bargaining power disparity where a student athlete had a reasonable opportunity to understand the covenant and could have attended another university).

Ronald had a reasonable opportunity to understand the covenant. The Eleventh Circuit held that a nearly identical Aero Club covenant was clear and unequivocal. *See Torjagbo v. United States*, 285 Fed. Appx. 615, 621 (11th Cir. 2008) (per curiam). And Ronald had experience with this covenant. He was the chief flight instructor for the Aero Club and then a part-time instructor. Air Force policy required him to sign it every year. *See Keenan Packaging Supply, Inc. v. McDermott*, 700 N.W.2d 645, 654 (Neb. Ct. App. 2005) (holding that experience with similar contracts shows a lack of bargaining power disparity).

As a private party and an independent contractor, Ronald was not obligated to use Aero Club planes. *See* **49 U.S.C. § 44702(d)** (describing a DPE as a "private person"). *See also Ray Tucker & Sons, Inc. v. GTE Directories Sales Corp.*, 571 N.W.2d 64, 70 (Neb. 1997) (emphasizing that a bargaining power disparity depends on whether the affected party had other options at the time they signed the contract); *Munoz v. Nucor Steel Kankakee, Inc.*, 44 F.4th 595, 600 (7th Cir. 2022) (holding that there was no bargaining power disparity where an independent contractor could choose what jobs he wanted to take). Ronald had other options. He was not a victim of disparate bargaining power.

Despite acknowledging that Ronald was not a government employee, the district court tried to analogize to an against-public-policy contract releasing an employer's liability to an employee, claiming that here, "similar public policy concerns exist when the government is allowed to designate citizens to carry out vital government functions while simultaneously limiting its liability for any injuries the designee sustains while carrying out this role in a government aircraft." *See Panting v. United States*, 652 F. Supp. 3d 1064, 1072 (D. Neb. 2023), *citing Maucher v. Chicago, Rock Island & Pac. Ry. Co.*, 159 N.W. 422, 427 (Neb. 1916). Even assuming the Nebraska Supreme Court would extend this reasoning beyond employer-employee relationships, it is not implicated here. DPEs like Ronald set their own rates and schedules, are paid by pilot applicants, may conduct Checkrides out of any airport, and need not use the government's planes—working conditions beyond the government's control. The Nebraska Supreme Court would not extend any employer-employee logic to Ronald, an independent contractor.

-6-

B.

The Aero Club did not provide a public or essential service by renting the plane to Trubilla.

A "public service" is a "service provided or facilitated by the government for the general public's convenience and benefit." **Black's Law Dictionary** 1490 (12th ed. 2024). *See State v. Dailey*, 990 N.W.2d 523, 529 (Neb. 2023) ("[The Nebraska Supreme Court] often turn[s] to dictionaries to ascertain . . . plain and ordinary meaning."). The Aero Club is a private, not a public service. It sits on a military installation. And it allows only authorized members like Trubilla and Ronald to participate in flying activities. *See Sinu*, 983 N.W.2d at 523 (holding that a private university sports team did not provide a public service).

An "essential" service is of "the utmost importance; basic and necessary." **Black's Law Dictionary** at 686. "[O]rdinary negligence claims may generally be barred where [a decedent] voluntarily executes [a covenant not to sue] in order to participate in recreational or nonessential activities." *Sinu*, 983 N.W.2d at 523. Aero Clubs are "recreational activities established to promote morale." **Dep't of the Air Force**, **AFI 34-117**, *Air Force Aero Club Program* 5 (2014). The Aero Club allowed Trubilla to "[e]njoy [a] low-cost aircraft option[]," "[d]evelop [his] aeronautical skills," and advance his career by hiring Ronald to do the Checkride. *See id.* And it allowed Ronald to use that same "low-cost aircraft option[]" to conduct private business. *See id.* It allowed both of them to "[e]njoy a social activity." *See id.* Those services are not "basic and necessary" to the public interest. *See* **Black's Law Dictionary** at 686. *Cf. Custer Pub. Power Dist. v. Loup River Pub. Power Dist.*, 75 N.W.2d 619, 629 (Neb. 1956) (holding that a contract restricting the flow of electricity to the public was void as against public policy); *Montana-Dakota Util. Co. v. Williams Elec. Co-op., Inc.*, 263 F.2d 431, 433 (8th Cir. 1959) ("[A] contract which unreasonably restrains trade is contrary to public policy and void.").

The district court ruled that the covenant was against public policy because the government "implicitly agree[d] to provide an aircraft on which a government

-7-

designee would complete an essential government function." *See Panting*, 652 F. Supp. 3d at 1071. Assuming without deciding that Checkrides may be a public or essential service, by providing rental planes to its members the Aero Club *facilitates* that service; the Club doesn't provide it. *See Sinu*, 983 N.W.2d at 523 (focusing on a university's provision of services in the context of a covenant not to sue between it and a student athlete). *See also Baltimore & Ohio S. Ry. Co. v. Voigt*, 176 U.S. 498, 520 (1900) (upholding a covenant not to sue between a railroad company and an express messenger even though the express messenger used railroads to provide an essential public service); *Santa Fe, Prescott, & Phx. Ry. Co. v. Grant Bros. Const. Co.*, 228 U.S. 177, 185 (1913) (covenants not to sue may be upheld even if a contractual relationship "incidentally involve[s]" provision of a public service).

The Nebraska Supreme Court would not hold that the covenant violates public policy. It is at least not "clearly and unmistakably repugnant to the public interest." *See Hearst-Argyle Props.*, 778 N.W.2d at 472.

IV.

Lynne asks this court to hold that the plain language of the covenant did not cover Ronald's activities on the day of the crash. The district court ruled that it "need not consider [Lynne's] alternative theory that [Ronald] never signed the covenant in his capacity as a DPE." "When a district court fails to address a matter properly presented to it, [this court] ordinarily remand[s] to give the [district] court an opportunity to rule in the first instance." *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019). *See Dreith v. City of St. Louis*, 55 F.4th 1145, 1150 (8th Cir. 2022) (reversing a denial of summary judgment and remanding with instructions to consider an issue on which the district court reserved ruling).

This court remands to the district court for consideration whether the covenant applied to Ronald in his DPE capacity, and for such other proceedings as the district court deems appropriate. *See Banuelos v. Construction Laborers' Tr. Funds for S. Cal.*, 382 F.3d 897, 905 (9th Cir. 2004) (reversing a pretrial denial of summary judgment after a bench trial and remanding; *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 483 (7th Cir. 2009) (same).

\* \* \* \* \* \* \*

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

_____