ERNEST STUHT V. WILLIAM F. SWEESY.

FILED JUNE 2, 1896.   No. 6617.

1. Pleading: MOTION TO STRIKE. A motion to strike out portions of a pleading should designate with particularity the averments which it attacks.

2. ———: FAILURE TO SEPARATELY STATE CAUSES OF ACTION: REVIEW. A judgment will not be reversed because of the overruling by the court of a motion to require the plaintiff to separately state his causes of action, notwithstanding the fact that the petition might be construed as declaring on two contracts, when by a fair construction it may be construed as declaring on one only, with the other pleaded as matter of inducement, and where the court on the trial instructed the jury as to the issues on the latter theory.

3. Contracts: CONSIDERATION. A past consideration is sufficient to support a promise when the consideration was performed in pursuance of a previous request.

4. ———: ———: STATUTE OF FRAUDS. In such case the previous request, the performance of the consideration, and the subsequent promise constitute a single contract, and where it would otherwise be within the statute of frauds, the performance by one party, although preceding the promise, may be sufficient to take the case out of the statute.

5. Statute of Frauds: PARTY WALL: COST OF CONSTRUCTION. Accordingly, where one of two adjoining proprietors was about to build upon his land and at the request of the other constructed a party wall situated half on the land of each, and the other after the completion of the wall promised to pay one-half the cost thereof, the case is not within the statute of frauds and a recovery can be had upon the promise to pay.

6. Evidence: OFFER TO COMPROMISE. The rule excluding evidence of

offers to compromise existing disputes, does not exclude .evidence
of offers to compromise a dispute which form the basis or con-
stitute a part of a contract actually compromising such dispute,
when such last contract is sued upon.

ERROR from the district court of Douglas county.
Tried below before HOPEWELL, J.

The opinion contains a statement of the case.

*E. J. Cornish,* for plaintiff in error:

The alleged contract not being in writing is void.
(*Pitkin v. Long Island R. Co.,* 2 Barb. Ch. [N. Y.], 221;
*Selden v. Delaware & Hudson Canal Co.,* 29 N. Y., 634;
*Mumford v. Whitney,* 15 Wend. [N. Y.], 381; *Bonnelli v.
Blakemore,* 5 So. Rep. [Miss.], 228; *Rice v. Roberts,* 24 Wis.,
461; *Knight r. Beenken,* 30 Pa. St., 372; *Wolfe v. Frost,* 4
Sandf. Ch. [N. Y.], 73; *May v. Prendergast,* 2 Pa. Dist. Ct.
Rep., 613; *Price v. Lien,* 84 Ia., 590; *Morgan v. Bergen,* 3
Neb., 209; *Hunt v. Lipp,* 30 Neb., 469; *Lumpkin v. Johnson,*
27 Ga., 485; *Towlerton v. Davidson,* 7 Minn., 322; *Billingslea
v. Ward,* 33 Md., 48; *Myers v. Byerly,* 45 Pa. St., 368; *Will-
iams v. Morris,* 95 U. S., 444; *Congdon v. Darcy,* 46 Vt., 484;
*Hoffstat v. Voight,* 146 Pa. St., 632.)

Evidence of an offer of compromise was improperly ad-
mitted. (*Olson v. Peterson,* 33 Neb., 358; *Kierstead v. Brown,*
23 Neb., 595; *Eldridge v. Hargreaves,* 30 Neb., 638; *Robb v.
Hewitt,* 39 Neb., 217.)

*W. T. Nelson,* also for plaintiff in error.

*Kennedy, Gilbert & Anderson, contra:*

An action may be maintained on an oral agreement be-
tween adjoining owners that one shall erect a party wall
and the other pay half the expense, if the wall is built be-
fore revocation of the agreement. (*Rice v. Roberts,* 24
Wis., 461.)

A parol contract to contribute toward the expense of
erecting a party wall is not within the statute of frauds,

the wall being built before revocation of the agreement. (*Rindge v. Baker*, 57 N. Y., 209; *Masson's Appeal*, 70 Pa. St., 26; *Ensign v. Sharp*, 72 Ga., 708.)

IRVINE, C.

Sweesy brought an action against Stuht, alleging in his original petition that Stuht was, in 1888, the owner of the north one-third of lot 5, in block 169, in the city of Omaha, and that Pauline Chapman was the owner of the south two-thirds of that lot; that there was executed and delivered by said persons a written agreement whereby a party wall was to be maintained on the division line between their said lots. A copy of this contract was attached to the petition. It is unnecessary here to set out its terms beyond the facts that it provided that the party first having occasion to build should construct the wall, which should be of strength sufficient to support a building three stories or more in height; and that the other party should contribute one-half the cost of the same, payable, as the work progressed, on estimates made by the architect or superintendent of the building. The petition further alleged that in March, 1890, Sweesy became the owner of the Chapman lot, and that in the year 1890 he constructed a building thereon embracing a party wall in accordance with the contract. He prayed judgment for one-half the cost of said wall up to and including the third story, to-wit, $969.63. A general demurrer to this petition was sustained, obviously on the ground that the contract did not run with the land, and that Sweesy could, therefore, not avail himself of its benefits. Thereupon Sweesy filed an amended petition containing all the averments of the original, but alleging, in addition thereto, that when plaintiff was about to erect his building he and the defendant agreed that the party wall should be constructed on the division line between their respective lots, and that after the completion of the building the defendant, in consideration of the construction and completion of said wall, promised and un-

53

dertook to pay plaintiff one-half its cost up to and including the third story. A motion was made to require the plaintiff to separately state his causes of action, and also to strike out of the petition all averments with relation to the contract between the defendant and Pauline Chapman. This motion was overruled, whereupon the defendant answered, admitting the ownership of the premises as alleged, admitting the existence of the Chapman contract, and denying all other allegations of the petition. A trial was had, resulting in a verdict for the plaintiff for the amount claimed. The defendant brings the case here for review by proceedings in error. The petition in error contains fifty-one assignments of error. Many of them present the same questions of law, and the case can best be disposed of by a consideration of the general legal questions to which the assignments relate, without separate reference to each of the assignments.

The defendant contends that the court erred in overruling the motion to require the plaintiff to separately state his causes of action, and to strike out of the petition that portion relating to the contract between Stuht and Pauline Chapman. The theory of this motion was that the plaintiff in a single count declared upon the Chapman contract and also upon a subsequent parol contract; that the sustaining of the demurrer to the original petition took out of the case all consideration of the Chapman contract. We construe the amended petition, however, as declaring only upon the subsequent parol contract between the parties to this action, and as pleading the Chapman contract as matter of inducement. It is very probable that the district court should, on a proper motion, have stricken out some of the averments. But the motion did not specify any particular portions which should be stricken out, but left the court to surmise or determine what portions the pleader meant as referring to the Chapman contract. For this reason, if for no other, there was no error in overruling the motion. A motion to strike should designate with particularity

the averments which are deemed surplusage.  Moreover, there was no prejudice to the defendant in the court's action, because the instructions informed the jury with admirable clearness that the action was based on the parol contract, and not on the written contract with Pauline Chapman.

The next question presented is whether the parol contract was valid.   The evidence tends to show that Sweesy caused plans to be drawn for the building which he was about to construct, which plans contemplated a wall entirely upon his own land, he being then ignorant of the existence of the Chapman contract.   Mr. Stuht, in company with the plaintiff, visited the architect's office and examined these plans, whereupon Stuht suggested that, as he contemplated building on his lot the following year, the plaintiff should construct his north wall half upon each lot, making thereof a party wall, and that he should construct it with arches at the ends of the hallways and with the elevator near the north end of the building, instead of at the south where it had been planned, so that when Stuht should build the two buildings might be connected and one elevator used for both.   There is also evidence tending to show that the plaintiff, at Sweesy's request, increased the capacity of the heating apparatus in order that it might be available for Stuht's building when constructed.   The plans were changed accordingly and the party wall constructed, Stuht from time to time seeing the work and knowing that it was being done according to his suggestion.   After its completion Mr. Sweesy procured his attorney to draw a party wall contract. This was done, but Stuht refused to sign it, saying that there was already in existence a contract with Pauline Chapman and that he would pay for the wall in accordance with the terms of the Chapman contract, which facts rendered the pleading of that contract proper by way of inducement and rendered evidence thereof relevant. Sweesy thereupon caused the architects to make an estimate of the cost of one-half of the wall up to and includ-

ing the third story, in accordance with the terms of the Chapman contract. The correctness of this estimate is in nowise impeached. Most of the foregoing evidence is contradicted; but as the verdict was for the plaintiff we must accept the foregoing facts as established in ascertaining the sufficiency of the evidence. Whether the court was right in holding that the Chapman contract did not run with the land is a question which does not concern us and which we do not decide. The plaintiff, by his amended petition, rests his case on the subsequent parol contract; and it must stand or fall on this contract. When we look to the evidence we find that what it tends to show is a request by Stuht, before the building was constructed, to construct the party wall, indeed, an agreement between the parties that it should be constructed, but so indefinite in its terms that whether it could be enforced is doubtful; the construction of the wall in accordance with that request or agreement, and a subsequent specific promise by Stuht to Sweesy to pay therefor. It is said that the consideration for this promise was past and that the promise was therefore *nudum pactum*. The law was, however, as early as the time of Queen Elizabeth, settled contrary to this view. *Hunt v. Bate*, 3 Dyer [Eng.], 272, is reported to the following effect: The servant of a man was arrested and imprisoned for trespass. He was let to mainprise by the manucaption of two citizens in consideration that the business of the master should not go undone. Afterwards the master promised to save the mainpernors harmless for all damages which should be adjudged. They were afterwards compelled to pay, and brought assumpsit. On motion in arrest of judgment it was held that the action did not lie, for want of consideration for the promise, because the master had not requested the plaintiffs to become sureties for the servant. But in another like action brought upon a promise of £20 made to the plaintiff by the defendant, in consideration that the plaintiff, at the special instance of the defendant, had taken to wife a cousin of the defendant, that

was good cause, although the marriage was executed before the undertaking and promise, because the marriage ensued the request of the defendant. The leading case of *Lampleigh v. Brathwait*, Hob. [Eng.], 105, is to the same effect, the court quaintly saying: "It was agreed that a mere voluntary courtesy will not have a consideration to uphold an assumpsit. But if that courtesy were moved by a suit or request of the party that gives the assumpsit it will bind for the promise, though it follows, yet it is not naked, but couples itself with the suit before, and the merits of the party procured by that suit, which is the difference." The same distinction is recognized in the more recent case of *Eastwood v. Kenyon*, 11 Ad. & E. [Eng.], 438; and in this country by Chief Justice Shaw in *Dearborn v. Bowman*, 3 Met. [Mass.], 155. (See, also, *Townsend v. Hunt*, 1 Cro. Car. [Eng.], 408.) These authorities, while mostly ancient, are still recognized as stating the law, and they certainly commend themselves to one's sense of justice.

It is next contended that the promise was within the statute of frauds and void because not in writing. Whether a promise in such a case is within the statute of frauds we need not inquire. See, however, *Stephens v. Harding*, 48 Neb., 659, on this point. If it were, it would be in this case taken out by part performance. The plaintiff had changed the plans of his building and had built his north wall partly on defendant's lot, it is true not relying on the specific promise made subsequent thereto, but undoubtedly in reliance upon the previous request or agreement. The philosophy of the cases referred to on the preceding question must be that where there has been a request on one side, a performance in pursuance thereof on the other, and a subsequent promise to pay therefor, the three acts link together and constitute a single transaction, the contract relating back to the original request. So that the performance by Sweesy, while it preceded the specific promise, followed and was induced by the request, and the whole matter

stands as if a distinct parol agreement had been made before the wall was built, in accordance with the terms of the promise made thereafter.

Some of the assignments of error relate to the admission of evidence as to the conduct of the parties prior to the promise. The views of the court as already expressed, we think, show the relevancy of that evidence so as to render a particular discussion here unnecessary.

Another assignment is that the court erred in permitting Mr. Kennedy, plaintiff's attorney, to give evidence of an offer made by Stuht in the way of compromise. This testimony related to a conversation between Kennedy and Stuht at the time Sweesy endeavored to procure the written agreement. It was a part of the negotiations which led to the promise sued upon. It was not an offer to compromise the now existing cause of action, but merely went in, in connection with other conversation, as a part of the transactions leading to the consummation of the contract sued on.

We think we have covered the questions raised by all the assignments of error, although they have not been noticed in detail. The rulings of the court upon the evidence, and the instructions, were in precise accordance with the views we have announced.

JUDGMENT AFFIRMED.