Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2023 09:10 AM CST

Alpha Wealth Advisors, LLC, a Nebraska limited liability company, and Michael Hall, individually, appellants, v. Jenna L. Cook, appellee.

___ N.W.2d ___

Filed January 13, 2023.    No. S-21-972.

1. **Actions: Parties: Standing.** Whether a party who commences an action has standing, and is therefore the real party in interest, presents a jurisdictional issue.

2. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court.

3. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

4. **Jurisdiction: Appeal and Error.** Before reaching the merits of the legal issue presented for review, an appellate court must determine whether it has jurisdiction over the matter before it.

5. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

6. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

7. ____: ____. A plaintiff does not generally have standing to bring a case on behalf of a third party.

8. **Damages: Evidence.** Evidence of damages must be sufficient to enable the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness.

9. **Damages: Proof.** A claim for lost profits must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness.

10. **Courts: Juries: Damages.** While it is the jury's duty to determine the amount of damages, it is the duty of the trial court to refrain from submitting the issue of damages to the jury where the evidence is such that a jury could not determine the issue without indulging in speculation or conjecture.

11. **Summary Judgment: Directed Verdict: Trial: Evidence.** Evidence offered in summary judgment proceedings, but not offered at trial, cannot be considered in determining whether the evidence adduced at trial is sufficient to preclude a directed verdict.

12. **Trial: Witnesses: Proof.** In order to predicate error upon a ruling of the court's refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Perry A. Pirsch, of Pirsch Legal Services, P.C., L.L.O., for appellants.

Jane D. Hansen for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

Alpha Wealth Advisors, LLC (Alpha Wealth), and Michael Hall (collectively the appellants) appeal the decision of the district court for Lancaster County, Nebraska, which granted directed verdicts against them. After a traffic accident, the appellants sued Jenna L. Cook for negligence, alleging that they lost commissions because the injuries that Hall received in the accident kept him from meeting with clients for several

weeks. The district court found that there was insufficient evidence to submit those claims to a jury and granted Cook's motion for a directed verdict against the appellants on those claims. Finding no error, we affirm.

## BACKGROUND

Hall and Cook were involved in a traffic accident in Lincoln, Nebraska, in 2019. Cook admits that she was at fault. Hall is a registered investment advisor and a partner in Alpha Wealth.

In suing Cook, the appellants sought damages because the soft tissue injuries that Hall received in the accident kept him from meeting with clients and potential clients for several weeks. The appellants alleged that Hall worked primarily with clients who have at least $500,000 to invest and that they received commissions of 1.18 percent or 5 percent on investments, as well as an additional .5 percent on certain investments in subsequent years. Accordingly, the appellants claimed that Hall's inability to meet clients decreased his "earnings" in the second quarter of 2019 by nearly $33,000. They similarly claimed that Alpha Wealth "lost, conservatively, over $71,000 in gross compensation for 2019 and $19,000 each year going forward." They sought damages for those losses and for Hall's medical expenses and pain and suffering.

A jury trial was held. The appellants presented testimony from Hall; Cassi Hillgren, operations manager for Alpha Wealth; David Rosenbaum, a forensic economist; and Robert Kallio, Hall's chiropractor.

### HILLGREN'S TESTIMONY

Hillgren testified that she knew of at least three potential clients whom Hall was unable to meet after the accident. She stated that Hall typically met with 5 to 10 clients or potential clients per week, with "one or two out of ten" meetings resulting in new business. She indicated that she was familiar with the appellants' "gross revenue," but was not asked to specify their revenue or their expenses.

Hillgren also testified that Hall's productivity and commissions dropped after the accident. She indicated that Alpha Wealth's expenses "are taken out" of the commissions of Hall and another agent and that it was "really hard for [them]" after the accident "because of the income that . . . was no longer coming in." She attributed that decrease in revenue to the accident.

## Hall's Testimony

Hall testified that he was unable to meet with three or four clients after the accident. According to Hall, over 90 percent of the people he meets with become clients. Hall explained that he and Alpha Wealth received a commission of between .5 and 3 percent on investments and, in certain cases, in subsequent years. He stated that those commissions were "gross revenue paid to Alpha Wealth" and that the company's expenses "come out of this gross revenue." He also testified that he is "by far" the "largest income producer for [his] firm." When asked how the accident "impacted the [company's] revenue stream," Hall stated that it "basically cost [him] a full month of work . . . that amounts to $40,000 of revenue coming in, by me not being able to get out and see people."

On cross-examination, Hall testified that he "personally lost $32,000" after the accident and that "Alpha Wealth also lost income." He initially stated that the company's claim was "the same" as his, but later clarified that it was $71,000. He stated that his concern as to Alpha Wealth "is the future income from the people we would have got during that time . . . . The trails on all that business . . . over the next five to ten years . . . ."

## Rosenbaum's Testimony

Rosenbaum testified that he reviewed "Hall's commission statements" from 2018 and 2019 and found a "variance of just over $32,000" between the commissions received in the second quarter of 2019 and the commissions received in other quarters. The appellants repeatedly attempted to elicit

testimony from Rosenbaum that the accident caused that decrease. However, Cook objected on foundational grounds. The district court agreed, but noted that the appellants could make an offer of proof.

On cross-examination, Rosenbaum agreed that the commissions in any given month can reflect work with clients in prior months and that "whatever was going on in the second quarter may have been a result of . . . the first quarter."

## KALLIO'S TESTIMONY

Kallio testified that he had been Hall's chiropractor since 2011. The appellants repeatedly sought to have Kallio opine that the accident caused Hall to lose productivity. However, Cook objected to those questions on foundational grounds, and her objections were sustained. Kallio did testify that Hall's diagnoses after the accident would have made it painful to sit at a desk and work at a computer and that he advised Hall to "take more breaks."

On cross-examination, Kallio testified that Hall had a history of neck and back pain and was treated for such pain 3 days before the accident. Kallio also testified that 3 days after the accident, Hall stated on a medical form that he had been able to work since the accident and that his pain was "moderate."

At the conclusion of this testimony, the appellants rested their case without making an offer of proof. Cook then moved for a directed verdict against the appellants on their claims for lost commissions. As to Alpha Wealth, Cook argued that although the company is "listed as a plaintiff," no evidence had been submitted defining or explaining its claim. Similarly, Cook argued that there was no evidence to support Hall's claim for "lost earnings, lost commissions"; "[i]t's all speculation." Cook also indicated that she had initially understood Hall's claims to be his own, but that the appellants were now making claims on behalf of Alpha Wealth that suggested they were "asking for double damages."

The appellants countered that there was testimony regarding "gross revenue" lost by both of the appellants. They argued

that Alpha Wealth's involvement had been clear from the start given that Alpha Wealth was named as a plaintiff and argued that it is a basic principle of agency law that the commissions Hall received while working as "an agent for his company" belong to the company. They also argued that Cook submitted nothing to suggest another explanation for the decrease in commissions and argued that a jury could reasonably infer from the testimony and evidence that Hall had suffered damages "in excess of $32,000."

Thereafter, the district court granted a directed verdict against Alpha Wealth and dismissed it from the case because "there was no evidence of any damages" to it. The district court also granted a directed verdict against Hall on his claims for lost commissions because the evidence submitted was insufficient for a jury to decide the issue of damages under *Midlands Transp. Co. v. Apple Lines, Inc.*[1] and inadequate to support an award of lost profits under *Evergreen Farms v. First Nat. Bank & Trust.*[2]

Hall's claims for medical expenses and pain and suffering were then submitted to the jury, which returned a verdict in his favor for $1,312. The district court accepted this verdict on the record, and Hall moved for additur, arguing that the amount awarded did not adequately compensate him. That motion was denied.

The appellants sought review by the Nebraska Court of Appeals, and we moved the matter to our docket.

ASSIGNMENTS OF ERROR

The appellants assign, restated, that the district court erred in concluding that, as a matter of law, there was no evidence of damages to Alpha Wealth or "lost income" to Hall and in instructing the jury to "disregard" Rosenbaum's testimony.

---

[1] *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972).

[2] *Evergreen Farms v. First Nat. Bank & Trust*, 250 Neb. 860, 553 N.W.2d 728 (1996), *distinguished on other grounds, ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

## STANDARD OF REVIEW

[1,2] Whether a party who commences an action has standing, and is therefore the real party in interest, presents a jurisdictional issue.[3] When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court.[4]

[3] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.[5]

## ANALYSIS

### Alpha Wealth's Damages

The appellants argue that the district court erred in granting a directed verdict against Alpha Wealth on its claim for damages because the testimony of "numerous witnesses" showed that the company "sustained damages" due to Hall's inability to meet with clients following the accident.[6] They also argue that as a basic matter of agency law, the "revenue" that Hall produced while "working [as] an agent" for a limited liability company belongs to the company.[7] Cook counters that the appellants "presented no evidence . . . of any loss incurred by Alpha Wealth."[8]

---

[3] *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 312 Neb. 606, 980 N.W.2d 420 (2022).

[4] *Id*.

[5] *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

[6] Brief for appellants at 30.

[7] *Id*. at 29.

[8] Brief for appellee at 11.

[4] Before reaching the merits of the legal issue pre-
sented for review, however, an appellate court must determine
whether it has jurisdiction over the matter before it.[9] A party
must have standing before a court can exercise jurisdiction,
and either a party or the court can raise a question of standing
at any time during the proceeding.[10] For the reasons discussed
below, we find that we lack jurisdiction over Alpha Wealth's
claim for lost commissions because the company lacks stand-
ing to bring an action for lost income due to an employee's
personal injuries.

[5-7] Standing refers to whether a party had, at the com-
mencement of the litigation, a personal stake in the outcome
of the litigation that would warrant a court's exercise of its
subject matter jurisdiction and remedial powers on that party's
behalf.[11] To have standing, the plaintiff must have some legal
or equitable right, title, or interest in the subject matter of the
controversy.[12] A plaintiff does not generally have standing to
bring a case on behalf of a third party.[13] The focus of the stand-
ing inquiry is not whether the claim the plaintiff advances has
merit; it is on whether the plaintiff is the proper party to assert
the claim.[14]

At oral argument, the appellants agreed that this is a "personal
injury case." However, they have not cited, nor have we been
able to identify, any principle that would allow an employer to
bring a claim for damages arising from an employee's personal
injury. The term "personal injury" denotes a "harm caused to a

---

[9] *State v. Reames*, 308 Neb. 361, 953 N.W.2d 807 (2021).

[10] *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019).

[11] *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021).

[12] *Id*.

[13] *Id*.

[14] See *Millard Gutter Co., supra* note 3.

person" or an "invasion of a personal right,"[15] and prior decisions of this and other courts have recognized that an individual who has suffered personal injuries may recover damages for his or her medical expenses, loss of earnings, and mental and physical pain.[16] Further, the injured individual may be able to introduce evidence of the lost profits of a business in which that individual has an interest to show his or her own loss of earnings.[17] However, this does not mean that a business has its own claim for lost profits when an individual who has an interest in that business suffers personal injuries.

In this matter, Alpha Wealth purports to be a Nebraska limited liability company. Under Neb. Rev. Stat. § 21-104(a) (Reissue 2022), a limited liability company is an entity distinct from its members. As such, any personal injuries alleged to have been suffered by Hall are not personal injuries suffered by Alpha Wealth.

The appellants suggested at oral argument that this case is unique because Hall was the primary source of income and revenue for Alpha Wealth. However, the record on appeal is insufficient for us to distinguish the case on that basis even if we were inclined to do so. For example, there is nothing in the record that conclusively establishes that Alpha Wealth existed as such at the time of the accident, how many members it then had, or its sources of revenue.

---

[15] Black's Law Dictionary 939 (11th ed. 2019).

[16] See, e.g., *Gallion v. O'Connor*, 242 Neb. 259, 494 N.W.2d 532 (1993); *Gray v. Wallace*, 319 S.W.2d 582 (Mo. 1958); *Fernwood Mining Co. v. Pluna*, 138 Ark. 459, 213 S.W. 397 (1919).

[17] *Kaufman v. Tripple*, 180 Neb. 593, 604, 144 N.W.2d 201, 208 (1966), quoting *Osterode v. Almquist*, 89 Cal. App. 2d 15, 200 P.2d 169 (1948) (distinguishing between claims based on businesses where lost profits "'resulted from an inability to exercise personal efforts or skill'" and those where lost profits are interwoven with "'other factors, such as invested capital, industry, and skill of others'").

### HALL'S LOST INCOME

The appellants argue that the directed verdict against Hall was improper because witnesses other than Rosenbaum testified that Hall "lost revenue" after the accident.[18] They also argue that the district court's instruction to the jury to "disregard Rosenbaum's testimony" was erroneous.[19] Cook counters that Hall's claim for "lost commissions/profits" was too speculative to be submitted to the jury or, alternatively, that there was no evidence that Cook's negligence caused Hall's damages.[20] We agree with Cook. We find that the district court properly determined there was insufficient evidence of damages to submit Hall's claims for lost profits to the jury.

To prevail in an automobile negligence action, a plaintiff must prove (1) that the defendant was negligent in one or more of the ways alleged, (2) that this negligence was a proximate cause of the collision, (3) that the collision was a proximate cause of some damage to the plaintiff, and (4) the nature and extent of that damage.[21] In this case, there is no dispute that Cook's negligence caused the collision. Instead, the parties disagree as to whether that collision caused damage to Hall and the extent of the damage.

[8,9] Damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages.[22] Evidence of damages must be sufficient to enable the trier of fact to estimate actual damages with a reasonable degree of certainty and exactness.[23] Proof of

---

[18] Brief for appellants at 29.

[19] *Id*. at 37.

[20] Brief for appellee at 12.

[21] See *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018).

[22] *Dietzel Enters. v. J. A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022).

[23] *Id*.

damages to a mathematical certainty is not required; however, a plaintiff's burden of offering evidence sufficient to prove damages cannot be sustained by evidence which is speculative and conjectural.[24] A claim for lost profits, in particular, must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness.[25] Also, the plaintiff cannot present just evidence of gross profits; there must also be evidence of the plaintiff's costs.[26] This is because only net profits are recoverable, and the plaintiff's net profits cannot be calculated where there is no evidence of costs.[27]

[10] While it is the jury's duty to determine the amount of damages, it is the duty of the trial court to refrain from submitting the issue of damages to the jury where the evidence is such that a jury could not determine the issue without indulging in speculation or conjecture.[28] The opinions of this court relied upon by the district court aptly illustrate this.

In *Midlands Transp. Co.*, we affirmed a directed verdict against the defendant on its cross-claim for breach of a covenant not to compete even though there was oral testimony from an official of the defendant that the loss of the customer that the plaintiff allegedly poached reduced the defendant's gross income by "'about $650 per week.'"[29] The defendant did not produce any records or books along with that testimony, and all amounts it cited involved gross income.[30] There was no evidence of its expenses or the relationship between

---

[24] *Id.*

[25] See *id.*

[26] See *ACI Worldwide Corp., supra* note 2.

[27] *Id.*

[28] See *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012).

[29] *Midlands Transp. Co., supra* note 1, 188 Neb. at 439, 197 N.W.2d at 648.

[30] *Id.*

its overhead and its gross revenue that could have been used in determining its net profits.[31] As a result, we found that if the issue of damages had been submitted to the jury, the jury would have been left "'to rove without guide or compass through the limitless fields of conjecture and speculation.'"[32]

Similarly, in *Evergreen Farms*, we found that the district court erred in overruling the defendant's motion for a directed verdict even though a witness for the plantiff testified that if the defendant had lent the money requested, the plaintiff could have fed an additional 2,000 head of cattle for 2 years and made a profit of 10 cents per head per day for that entire period.[33] The plaintiff produced no business records to support that claim, and there was nothing in the record showing its profits and losses on its cattle feeding operation.[34] As such, we concluded that the plaintiff's "proof regarding lost profits [was] too speculative and conjectural" for the jury to decide the issue.[35]

In light of these decisions, we find that the district court properly declined to submit Hall's claims for lost commissions to the jury. A claim for lost commissions is effectively a claim for lost profits.[36] In support of their claim, the appellants presented oral testimony from Hillgren, Hall, and Rosenbaum that Hall's commissions decreased after the accident. Rosenbaum testified that there was a "variance of just over $32,000" between Hall's commissions in the second quarter of 2019 and in the other quarters of 2018 and

---

[31] *Id.*

[32] *Id.* at 440, 197 N.W.2d at 649.

[33] *Evergreen Farms, supra* note 2.

[34] *Id.*

[35] *Id.* at 869, 553 N.W.2d at 735.

[36] Cf., *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 105 Cal. Rptr. 2d 88 (2011); *Equality Ins. Managers of Ill. v. McNichols*, 324 Ill. App. 3d 830, 755 N.E.2d 75, 257 Ill. Dec. 973 (2001).

2019. However, Hillgren did not specify an amount, while Hall gave two different amounts. Initially, he stated that the accident "cost [him] a full month of work . . . that amounts to $40,000 of revenue coming in," but subsequently, he stated that he "personally lost $32,000" after the accident. There was nothing further. In particular, the appellants presented no financial data through either oral testimony or business records as to the total amount or sources of Hall's commissions by quarter or otherwise.[37] Moreover, all the appellants' evidence involved gross revenue. They presented no evidence from which their net profits could be calculated. There was testimony that Hall's commissions and Alpha Wealth's revenue were used to pay expenses, but there was no indication of what or how much those expenses were.

[11] Neither the commissions statements referred to as exhibits 25 and 26 in Rosenbaum's testimony nor exhibit 13, mentioned in the appellants' brief on appeal, can be seen to provide the requisite financial data. None of those exhibits were offered and admitted into evidence at trial, as the appellants acknowledged at oral argument. Exhibits 25 and 26 originated as attachments to exhibit 2, which was offered and admitted into evidence at an earlier hearing on a motion for summary judgment. As such, they are part of the record on appeal. However, evidence offered in summary judgment proceedings, but not offered at trial, cannot be considered in determining whether the evidence adduced at trial is sufficient to preclude a directed verdict.[38] In contrast, exhibit 13, which purportedly showed Hall's range of earnings in each quarter of 2018 and 2019, is not part of the record on appeal.

[37] Cf. *ACI Worldwide Corp., supra* note 2 (declining to opine on whether business records are required to be submitted to support claim for lost profits under prior decisions, but concluding that plaintiff in that case had submitted such records, and its expert's lost profits analysis was supported by testimony of two other witnesses).

[38] *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001).

Evidence which does not appear in the record cannot be considered by this court on appeal. [39]

[12] The appellants' argument that the district court erred in directing the jury to disregard their expert's testimony is also not supported by the record on appeal. Nothing in the record suggests that the district court gave such a direction to the jury. The district court sustained Cook's objections to specific questions asked of Rosenbaum on direct examination, and Rosenbaum was not allowed to opine that Hall's alleged injuries were the cause of the apparent decrease in his commissions in the second quarter of 2019. However, the appellants did not provide an offer of proof and have not appealed those rulings. In order to predicate error upon a ruling of the court's refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. [40]

## CONCLUSION

The appellants' arguments that the district court erred in granting a directed verdict against them and instructing the jury to disregard the testimony of their expert are without merit. Accordingly, the judgment of the district court is affirmed.

Affirmed.

---

[39] See *Abboud v. Cutler*, 238 Neb. 177, 469 N.W.2d 763 (1991).

[40] *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).