Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/14/2023 08:06 AM CDT

- 698 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

Bruce Lavalleur, P.C., a Nebraska professional corporation, and Bruce Lavalleur, third-party plaintiffs, appellants and cross-appellees, v. The Guarantee Group, L.L.C., third-party defendant, appellee and cross-appellant.

___ N.W.2d ___

Filed July 14, 2023.    No. S-22-622.

1. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.
2. **Contracts: Statute of Frauds.** The determination of whether a contract falls within the statute of frauds is a question of law.
3. **Contracts: Public Policy.** The determination of whether a contract violates public policy presents a question of law.
4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
5. **Contracts: Parties: Intent.** A meeting of the minds occurs when one party accepts the offer of the other.

Appeal from the District Court for Hall County: Patrick M. Lee, Judge. Affirmed in part, and in part reversed and remanded for a new trial.

Siegfried H. Brauer, of Brauer Law Office, for appellants.

Tanya J. Hansen and Kevin P. Walsh, of Smith, Johnson, Allen, Connick & Hansen, for appellee.

- 699 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

The Guarantee Group, L.L.C. (Guarantee Group), asked Bruce Lavalleur to provide accountancy services related to Guarantee Group's development of a residential neighborhood. According to Lavalleur, he provided such services, and then an agent of Guarantee Group agreed to pay $205,000 for the work. Guarantee Group never paid, however, and so Lavalleur's professional corporation sued for breach of an oral contract. The case proceeded to a jury trial. At the close of Lavalleur's evidence, Guarantee Group moved for a directed verdict. The district court granted the motion on the ground that the oral agreement was unenforceable because it fell within a provision of the statute of frauds requiring agreements "not to be performed within one year" to be in writing. See Neb. Rev. Stat. § 36-202(1) (Reissue 2016).

In this appeal, we find that the district court erred by granting Guarantee Group a directed verdict on statute of frauds grounds. We also conclude that Guarantee Group's arguments that the district court erred by not granting a directed verdict on other grounds lack merit. We thus reverse the judgment in part and remand the cause for a new trial.

BACKGROUND

*Parties and Claims.*

Over the course of the life of this case, numerous parties asserted numerous claims. All those claims were resolved in the district court, but only certain parties and claims bear mention in this opinion. We first discuss those parties and then proceed to discuss the relevant claims.

On one side of the dispute at issue in this appeal is Lavalleur, a certified public accountant providing services through Bruce Lavalleur, P.C., a professional corporation of which he is the sole shareholder. For ease of reference, in

- 700 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

the remainder of this opinion, we refer to both Lavalleur and Bruce Lavalleur, P.C., as "Lavalleur," except where separate identification is necessary.

The other party involved in the dispute at issue is Guarantee Group, a limited liability company. During the relevant time, Guarantee Group was working to develop Copper Creek Estates, a housing development in Grand Island, Nebraska. Sean O'Connor held an ownership interest in Guarantee Group and acted on its behalf.

Several claims in this lawsuit were resolved before trial. The sole claims that proceeded to trial were (1) a claim by Lavalleur, individually, that Guarantee Group breached an agreement to build, sell, and finance a home for Lavalleur in Copper Creek Estates and (2) a claim by Bruce Lavalleur, P.C., that Guarantee Group breached a contract to pay for accountancy services related to the development of Copper Creek Estates.

*Trial Evidence.*

The primary evidence at trial was testimony of Bruce Lavalleur. Because this appeal comes to us from a directed verdict, we assume the truth of Lavalleur's testimony and recount the facts in that light, drawing all inferences in his favor. See *Alpha Wealth Advisors v. Cook*, 313 Neb. 237, 983 N.W.2d 526 (2023).

Lavalleur testified to interactions he had with Sean and Raymond O'Connor. Lavalleur had performed accountancy work for various business endeavors of Raymond since the 1980s. Lavalleur also provided accountancy services for Sean, who was Raymond's son.

Lavalleur testified that in the summer of 2013, Raymond asked Lavalleur whether he was interested in buying a home in Copper Creek Estates. When Lavalleur expressed that he might not qualify for a home loan, Raymond promised to borrow the money himself so that Lavalleur could "make the

- 701 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

payments to me instead of the bank." According to Lavalleur, he agreed to purchase a house under those terms.

In January 2014, Sean approached Lavalleur about the Copper Creek Estates development. Sean expressed concerns to Lavalleur about the profitability of the development. Worried that the development might lose money, Sean asked Lavalleur if he "could figure out a way to save or increase the profitability." Lavalleur proposed that if he could "find a solution to this projected possible loss of $1,700,000," he would charge Guarantee Group $800 per hour for his accountancy work. If Lavalleur could not "find[] anything," then Lavalleur told Sean that he would "shake [his] hand and go on." Sean expressed that he did not want Lavalleur "just running around and running up $800 an hour."

Following this exchange with Sean, Lavalleur spent several hundred hours analyzing the finances of the development. Lavalleur testified that after analyzing the project, he made recommendations for timing certain aspects of the development, and his associated financial projections "reflected what [he] would consider a small profit."

The parties discussed Lavalleur's compensation after he made his recommendations. Lavalleur testified that Sean initiated the conversation, asking Lavalleur "what he needed to compensate" Lavalleur for his work. Lavalleur initially proposed that Guarantee Group sign over the house that Raymond had promised to build him, but Sean declined. Lavalleur then suggested that Guarantee Group withhold $1,000 from the closing of each of the 205 houses in Copper Creek Estates, so that Lavalleur would be paid $205,000. According to Lavalleur, Sean agreed to that arrangement.

Later, after Guarantee Group had sold 42 homes, Sean offered Lavalleur $42,000 to "move on and that would settle it up." Lavalleur rejected the $42,000 offer and insisted that "the deal was for $205,000, period."

Lavalleur never received any compensation from Guarantee Group for the work on the development at issue.

- 702 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

*Directed Verdict.*

At the close of Lavalleur's case, Guarantee Group moved for a directed verdict. Guarantee Group first argued that it was entitled to a directed verdict on the claim asserted by Lavalleur individually. Guarantee Group argued that this claim was unenforceable as a sale of real estate covered by the statute of frauds. See Neb. Rev. Stat. § 36-105 (Reissue 2016).

Guarantee Group also sought a directed verdict on Bruce Lavalleur, P.C.'s claim that Guarantee Group breached its agreement to pay $205,000 for accountancy work related to Copper Creek Estates. As to this claim, Guarantee Group offered two alternative reasons it was entitled to a directed verdict. It first contended there was no evidence of a meeting of the minds to form an oral contract. Alternatively, Guarantee Group argued that even if an otherwise enforceable contract was formed, it was void as against public policy. Guarantee Group's public policy argument was that Lavalleur was seeking recovery under a contingent fee agreement and that he failed to comply with an administrative rule promulgated by the Nebraska State Board of Public Accountancy pertaining to such agreements.

The district court granted a directed verdict for Guarantee Group on the claim asserted by Lavalleur individually. Lavalleur's counsel conceded to the district court that a directed verdict on that claim was proper.

As for the claim asserted by Bruce Lavalleur, P.C., the district court appeared to reject Guarantee Group's argument that it was entitled to a directed verdict due to a lack of evidence as to a meeting of the minds, stating that "would probably be a factual issue for a jury to decide." And the district court did not mention Guarantee Group's argument that it was entitled to a directed verdict because the alleged agreement was void as against public policy. But the district court granted Guarantee Group a directed verdict on the basis of § 36-202(1), a portion of the statute of frauds requiring that agreements "not to be performed within one year from the

- 703 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

making thereof" be in writing. Although Guarantee Group did not move for a directed verdict on this basis, Guarantee Group had asserted in its answer that § 36-202 barred relief.

The district court concluded that the alleged oral agreement—under which Guarantee Group was to pay Lavalleur $1,000 per house for the closing of 205 houses—was not capable of being performed within 1 year. In reaching this conclusion, the district court relied on a spreadsheet prepared by Lavalleur that was received into evidence. The spreadsheet compiled financial data regarding the Copper Creek Estates project. Included in the spreadsheet were closing dates for homes within the project. Some of the closing dates were as late as 2022.

After an unsuccessful motion for a new trial, Lavalleur appealed. We moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

On appeal, Lavalleur assigns many errors, but we need address only one: that the district court erred by directing a verdict for Guarantee Group on Bruce Lavalleur, P.C.'s breach of contract claim on the basis of the statute of frauds. We do not understand Lavalleur to assign and argue any error in the district court's entry of a directed verdict in favor of Guarantee Group on the claim asserted by Lavalleur in his individual capacity. Accordingly, we do not discuss that claim and affirm the district court's entry of a directed verdict on it.

On cross-appeal, Guarantee Group assigns that the district court erred in rejecting alternative grounds for a directed verdict on the breach of contract claim for accountancy services. Specifically, Guarantee Group argues that the district court erred (1) in failing to direct a verdict on the grounds that the parties did not form an enforceable contract and (2) in failing to direct a verdict on the grounds that the contract was void as against public policy.

- 704 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Alpha Wealth Advisors v. Cook*, 313 Neb. 237, 983 N.W.2d 526 (2023).

[2] The determination of whether a contract falls within the statute of frauds is a question of law. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

[3] The determination of whether a contract violates public policy presents a question of law. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[4] An appellate court independently reviews questions of law decided by a lower court. *Id.*

## ANALYSIS

*Contract Formation.*

We first address whether and on what terms a reasonable jury could have found that the parties entered an oral contract. See *Weyh v. Gottsch*, 303 Neb. 280, 297, 929 N.W.2d 40, 53 (2019) ("[t]he disputed terms of an oral agreement are questions of fact"); *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 696, 695 N.W.2d 665, 670 (2005) ("[w]hether a contract exists is a question of fact"). We must do so because a directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022). In other words, if reasonable jurors *could* find facts that would allow the nonmoving party to prevail, a directed verdict should not be granted. See John P. Lenich, Nebraska Civil Procedure § 30:24 at 1355-56 (2023)

- 705 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

("a directed verdict is proper when a reasonable jury could only return a verdict for the moving party"). On this issue, Guarantee Group argues that we should affirm the directed verdict for a reason the district court appeared to reject—that there was inadequate evidence by which a reasonable jury could have found that Lavalleur entered an enforceable contract with Guarantee Group.

[5] Three things are needed to form an enforceable contract: offer, acceptance, and consideration. See *In re Estate of Ryan*, 302 Neb. 821, 925 N.W.2d 336 (2019). A "meeting of the minds" occurs, and the first two elements are satisfied, when one party accepts the offer of the other. See *Gibbons Ranches v. Bailey*, 289 Neb. 949, 953, 857 N.W.2d 808, 812 (2015). We begin our analysis of whether a contract was formed with whether there was adequate evidence of a meeting of the minds.

Lavalleur argues that an enforceable contract was formed after he performed the accounting work at issue when Sean agreed that Guarantee Group would withhold $1,000 from the closing of each of the 205 houses in Copper Creek Estates and pay it to Lavalleur as compensation. Lavalleur contends that his testimony that he proposed such an arrangement and that Sean agreed to it was sufficient evidence of an offer and acceptance to withstand a motion for directed verdict. Guarantee Group, on the other hand, argues that Lavalleur's testimony could not have supported a finding that there was a meeting of the minds. It characterizes Lavalleur's testimony as "self-serving" and seems to argue that it should be weighed against the totality of other evidence presented at trial. Brief for appellee on cross-appeal at 36.

Keeping in mind the governing standard of review, we must agree with Lavalleur. Our inquiry is not whether Lavalleur's testimony is self-serving or even whether a jury is likely to believe it. Rather, because Guarantee Group is arguing it was entitled to a directed verdict, we must assume "the truth of all competent evidence submitted" by Lavalleur, the

- 706 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

nonmovant, and resolve "every controverted fact" in his favor. *Alpha Wealth Advisors*, 313 Neb. at 243, 983 N.W.2d at 532. Viewed through that lens, we must accept as true Lavalleur's testimony that Sean agreed to pay him $205,000 for the accounting services he had performed by withholding $1,000 for Lavalleur from each house closing in Copper Creek Estates. Once that testimony is accepted as true, Guarantee Group's argument crumbles. Reasonable jurors could find an offer and acceptance on the basis of Lavalleur's testimony; thus, Guarantee Group was not entitled to a directed verdict because of inadequate evidence of a meeting of the minds.

Even if there was adequate evidence of a meeting of the minds, whether a reasonable jury could find an enforceable contract turns on an additional question—namely, whether the agreement was supported by sufficient consideration. This question is particularly salient in this case because of the longstanding general common-law rule that past consideration is no consideration at all. See 4 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 8:11 (4th ed. 2008). See, also, *Chalupnik v. Brant*, 134 Neb. 465, 279 N.W. 159 (1938). If the general rule that past consideration cannot form a contract applied in this case, the contract Lavalleur contends he formed would lack sufficient consideration. As Lavalleur acknowledges, the only consideration provided for Sean's alleged promise to pay $205,000 was services Lavalleur *had already performed*.

There are, however, exceptions to the general rule that a contract cannot be supported by only past consideration. See 4 Lord, *supra*, § 8:11. Relevant here, English common-law courts recognized such an exception by holding that "a promise made in recognition of past services rendered at the request of the promisor was enforceable." *Id*., § 8:13 at 304. See, also, *Lampleigh v. Brathwait*, (1615) 80 Eng. Rep. 255 (K.B). This exception was later recognized by a majority of American courts. 4 Lord, *supra*, § 8:13. See, e.g., *Reece v. Reece*, 239 Md. 649, 660, 212 A.2d 468, 474 (1965) ("a

- 707 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

present promise to pay in consideration of an act previously done at the request of the promisor will be enforceable as supported by sufficient consideration even though that consideration consists of an act previously done"); *Sargent v. Crandall*, 143 Colo. 199, 201, 352 P.2d 676, 677 (1960) ("a promise is enforceable if supported by a past consideration rendered at the promissor's request"); *Worner Agency, Inc. v. Doyle*, 133 Ill. App. 3d 850, 857, 479 N.E.2d 468, 473, 88 Ill. Dec. 855, 860 (1985) (recognizing exception where "consideration was rendered at the request of the promisor").

In the early years of this state's history, this court applied the common-law exception to an oral agreement similar to the one at issue here. See *Stuht v. Sweesy*, 48 Neb. 767, 67 N.W. 748 (1896). In *Stuht*, a landowner asked his neighbor to construct a wall dividing their property. The neighbor built the wall; thereafter, the landowner promised to pay half the construction costs. When the landowner later refused to pay, the neighbor sued to enforce the oral agreement. This court rejected the landowner's argument that his promise to pay was unenforceable on the grounds that "consideration for this promise was past." *Id.* at 772, 67 N.W. at 750. Instead, citing the English authorities, we applied the "settled" common-law rule that if someone performs an act at the "request of the party that gives the assumpsit [i.e., promise]," then the promise to pay is "bind[ing]." *Id.* at 772, 773, 67 N.W. at 750 (internal quotation marks omitted).

We see no reason not to follow *Stuht* here. And if we view the evidence in the light most favorable to Lavalleur, sufficient consideration could be found under *Stuht*. Lavalleur testified that he performed accounting services related to the Copper Creek Estates project at Sean's request and that Sean later promised to pay him $1,000 from the closing of each of the 205 homes in the project for those services.

Because we conclude that a reasonable jury could find the parties formed an enforceable contract that Guarantee Group would pay Lavalleur $1,000 from the closing of every

- 708 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

home in the project for the accounting work, we decline to affirm the district court's directed verdict on that basis.

*Statute of Frauds.*

We next address Lavalleur's argument that the district court erred by granting a directed verdict on the grounds that the oral contract falls within the 1-year provision of the statute of frauds. The statute of frauds makes certain agreements "void" if they are not "in writing." § 36-202. The text of Nebraska's statute of frauds covers every unwritten agreement that, "by its terms, is not to be performed within one year from the making thereof." § 36-202(1).

In applying the 1-year provision of the statute of frauds, most courts follow the approach of the U.S. Supreme Court in *Warner v. Texas and Pacific Railway*, 164 U.S. 418, 17 S. Ct. 147, 41 L. Ed. 495 (1896), which itself followed the approach of the English courts at common law. See 9 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 24:3 at 629 (4th ed. 2011) (calling *Warner* a "leading case"). In *Warner*, the Court explained that to determine whether an oral agreement fell within the statute's 1-year provision, the relevant "question is not what the probable, or expected, or actual performance of the contract was[,] but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." 164 U.S. at 434. The U.S. Supreme Court emphasized that this rule applied even though the "parties may well have expected that the contract would continue in force for more than one year." *Id.* Even if complete performance within a year "may have been very improbable," and even if performance of the contract "did in fact continue in force for a much longer time," courts must consider whether the agreement "required" performance to last longer than 1 year. *Id.*

Nebraska adheres to this interpretation of the statute of frauds' 1-year provision. And the case for doing so in Nebraska is even stronger than it is in other jurisdictions

- 709 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

based on the specific text of our statute. Nebraska's 1-year provision voids an oral contract that, "*by its terms*, is not to be performed within one year from the making thereof." § 36-202(1) (emphasis supplied). Compare § 36-202(1), with An Act for Prevention of Frauds and Perjuries, 29 Car. 2, ch. 3, § 4 (1677) (original English statute of frauds) ("no action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof"). Thus, to determine whether an oral agreement falls within the 1-year provision, we consider only the terms of the agreement to decide whether the contract is "capable of being performed within 1 year" of its formation. *Linscott v. Shasteen*, 288 Neb. 276, 284, 847 N.W.2d 283, 291 (2014). We, consistent with *Warner, supra*, do not ask whether the contract "may, or probably will, not be performed within 1 year." *Linscott*, 288 Neb. at 284, 847 N.W.2d at 291.

A discussion in *Rath v. Selection Research, Inc.*, 246 Neb. 340, 519 N.W.2d 503 (1994), illustrates how the 1-year provision is applied. In *Rath*, we explained that an oral contract for lifetime employment would not fall within the statute of frauds. Even though the parties may expect such a contract to last many years, it is theoretically possible that the employee would die within a year, thus constituting full performance of the contract within a year. We also explained, however, that an oral contract with a specified term of more than 1 year would be within the statute of frauds because it is not capable of performance within the year. See, also, *C.R. Klewin v. Flagship Properties*, 220 Conn. 569, 580, 600 A.2d 772, 778 (1991) (holding that oral contract to complete large-scale development project did not fall within statute of frauds' 1-year provision even though full performance within 1 year was "realistically impossible").

Guarantee Group resists our longstanding interpretation of the 1-year provision of the statute of frauds. It relies on a statement we made nearly a decade ago that "[t]o be void, the express terms of a contract must show that performance

- 710 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

was to occur outside of 1 year *or the facts must show that the parties could not have intended for performance to be completed within 1 year*." *Linscott*, 288 Neb. at 284, 847 N.W.2d at 291 (emphasis supplied). Guarantee Group in effect suggests that expectations of the parties not reflected in the terms of the contract may bring the contract itself within the 1-year provision of the statute of frauds.

Unlike Guarantee Group, we do not understand our statement in *Linscott* to depart from our well-established interpretation of the 1-year provision. The reference in *Linscott* to the parties' intent does not refer to some unannounced, extracontractual intention or expectation. The case *Linscott* cites in support of its statement confirms as much. See *id.*, citing *Powder River Live Stock Co. v. Lamb*, 38 Neb. 339, 56 N.W. 1019 (1893). In explaining how to interpret the 1-year provision in *Powder River*, this court noted that "there must be an express and specific stipulation in the contract that it is not to be performed within the year, or it must appear therefrom that it was not the intention of the parties the agreement should be performed within that period." 38 Neb. at 348, 56 N.W. at 1021. "[I]t must appear *therefrom*" refers back to "the contract," so read in context, *Powder River* makes a very limited claim: It must appear from the contract that the parties did not intend the agreement to be performed within 1 year. The parties' intent is, in other words, expressed in the terms of the contract. (Emphasis supplied.) And to the extent the reference in *Linscott* to "facts" implies that evidence besides the terms of the contract bear on whether the contract "is not to be performed within one year," we reject that implication. See § 36-202(1). Only an agreement that "by its terms" cannot be performed within 1 year is covered by § 36-202(1).

With the foregoing principles established, it becomes apparent that the district court erred by granting a directed verdict on statute of frauds grounds. As we have discussed, a reasonable jury could find that an oral contract was formed with the following terms: Guarantee Group agreed to pay

- 711 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

Lavalleur $205,000 for accounting services he had performed by withholding $1,000 for Lavalleur from the closing of each of the 205 houses in Copper Creek Estates. No terms of such an agreement required that it be performed in more than a year. That is enough to remove the oral contract from § 36-202(1).

In the spreadsheet relied upon by the district court, Lavalleur did list closing dates for several homes that were several years after the contract was formed. In addition, Lavalleur agreed that Copper Creek Estates was a "long-term project" or, in his words, a project of "[s]everal years." But this evidence, at most, establishes that the parties did not expect or that it was realistically improbable that Guarantee Group would close on 205 homes within 1 year. It does not demonstrate that the terms of the contract made it impossible for Guarantee Group to perform its obligations within 1 year.

Because a reasonable jury could find the existence of an oral contract, the terms of which were capable of being performed within 1 year, the contract did not have to be in writing under § 36-202(1). The district court erred in concluding otherwise and in granting a directed verdict on that ground.

*Public Policy.*

This leaves only Guarantee Group's argument that we should affirm the directed verdict on the grounds that the alleged contract was void as against public policy. As we will explain, we find no basis to affirm on that ground.

To begin, we emphasize that courts are disinclined to find a contractual agreement void as against public policy. See *Sinu v. Concordia University*, 313 Neb. 218, 983 N.W.2d 511 (2023). We have said that a contract is void against public policy only when it is "quite clearly repugnant to the public conscience" and "only in cases free from doubt." *Id.* at 229, 230, 983 N.W.2d at 522.

Although we often observe that it is the function of the Legislature, through the enactment of statutes, to declare

- 712 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

what is the law and public policy of this state, see, e.g., *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018), Guarantee Group argues that the alleged contract is contrary to a public policy expressed in an administrative rule promulgated by the Nebraska State Board of Accountancy. The Legislature has empowered that body to promulgate rules of professional conduct that govern certified public accountants in Nebraska. See, Neb. Rev. Stat. § 1-112 (Reissue 2022); 288 Neb. Admin. Code, ch. 5 (2010). One of those rules provides that a certified public accountant "who accepts a contingent fee or expects to be paid a contingent fee shall provide written disclosure of such acceptance or payment and the basis for determining such fee to the client." 288 Neb. Admin. Code, ch. 5, § 005.03B. Under that rule, a "contingent fee," with one exception not relevant here, includes an arrangement "in which no fee will be charged" by the accountant "unless a specified finding or result is attained, or in which the amount of the fee is otherwise dependent upon the finding or result of such service." *Id.*

Guarantee Group argues that Lavalleur is attempting to enforce a contingent fee agreement for certified public accountancy services and that he offered no evidence that he provided Guarantee Group with the written disclosure required by the administrative rule. In support of its argument that Lavalleur is attempting to enforce a contingent fee agreement, Guarantee Group points to his testimony that he asked to be paid $800 an hour "if [he] could find a solution," but that if he was not "able to do [Guarantee Group] any help," he would not be paid.

We disagree that Lavalleur is seeking to collect a contingent fee for purposes of the administrative rule. Lavalleur's testimony that Guarantee Group relies upon pertained to his discussions with Sean prior to his performing the accountancy work at issue. But Lavalleur is not now trying to recover a fee based on those discussions. Rather, he is trying to recover based on Sean's alleged promise to pay $1,000

- 713 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
BRUCE LAVALLEUR, P.C. v. GUARANTEE GROUP
Cite as 314 Neb. 698

from every home closing in Copper Creek Estates. This later alleged promise to pay Lavalleur was not, in the words of the administrative rule, a promise to pay only if a "specified finding or result is attained." 288 Neb. Admin. Code, ch. 5, § 005.03B. Neither was the amount of the fee "dependent upon the finding or result." *Id*. Instead, at least according to Lavalleur's testimony, which must be credited as true at this stage, Sean simply promised to pay Lavalleur $205,000 without contingencies.

As we have discussed, a reasonable jury could find that the parties formed an enforceable contract when Sean promised to pay Lavalleur $1,000 from every closing in Copper Creek Estates for his accountancy work. Such a contract would not even be covered by the administrative rule relied upon by Guarantee Group. Accordingly, we see no basis to find that the district court should have granted a directed verdict to Guarantee Group on the grounds that the alleged contract was void as against public policy.

## CONCLUSION

We reverse the district court's directed verdict with respect to Bruce Lavalleur, P.C.'s claim that Guarantee Group breached an oral contract to pay for accounting services and remand the cause for a new trial on that issue. Because no challenge is raised on appeal to other aspects of the district court's judgment, we otherwise affirm the judgment of the district court.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.